BREENE v. MERCHANTS' & MECHANICS' BANK ET AL.

1. A writ of error to a final judgment brings up for review an order made discharging an attachment.

2. Under the laws of Colorado corporations may sue and be sued as individuals.

3. Insolvency alone does not prevent a corporation from transacting business.

4. Creditors are not deprived of their legal remedies against a corporation by reason of its insolvency. The remedy by attachment is one of the remedies so provided by law.

5. An attachment lien relates back to the date of levying the attachment writ. After an attachment lien has vested upon the property of a corporation it will not be divested by subsequent proceedings for winding up the company, unless the contrary be expressly provided.

6. An alleged cause for attachment " that the action is brought upon an instrument in writing over due, and for the direct payment of money," states a good cause for attachment.

7. In the absence of equity jurisdiction, properly invoked, the assets of an insolvent corporation do not constitute a trust fund for *pro rata* distribution among all its creditors, nor in such case does any superior equitable lien exist as against a prior attaching creditor.

*Error to District Court of Lake County.*

THE facts are stated in the opinion.

Messrs. MARKHAM, PATTERSON, THOMAS and LYLES, J. W. EWING and CLINTON REED, for plaintiff in error.

Messrs. J. B. BISSELL, J. W. TAYLOR and L. S. DIXON, for defendants in error.

DE FRANCE, C. The defendant bank, a corporation engaged in the banking business at Leadville, suspended payment and closed its doors to the public on the afternoon of the 30th day of January, 1884. For some time previous thereto it had been, and was then, in an insolvent condition, indebted, as afterwards appeared, over $200,000, and having assets sufficient to discharge only about one-third of its indebtedness. In less than an hour after it closed its doors, the plaintiff, Breene, the holder of a certified check on said bank, calling for $7,000, then over due, brought suit in the district court of Lake county to recover the money due thereon, and procured the money and property of said bank to be attached as security. On the 6th of February, 1884, the stockholders of said bank instituted a suit against the same in said court, and applied for the appointment of a receiver therefor; and on the 15th day of February of that year the defendant, Talbot, was appointed receiver thereof. As such receiver, Talbot was afterwards made a party defendant to this action, and on the 5th of May following filed a petition therein, together with an affidavit in support thereof, representing, among other things, his appointment and qualification as such receiver; the insolvency of said bank; that a number of the creditors of said bank, besides the plaintiff, Breene, representing about $75,000 of the indebtedness of said bank, had commenced actions against the bank prior to his appointment, and had also procured the property of said

bank to be attached in aid thereof; that the remaining creditors had taken no action in the premises; and in order to secure the property and effects of said bank or the proceeds thereof for the benefit of all the creditors, to be distributed *pari passu* among them, giving to none a preference over the others, prayed the court to discharge the attachment writ herein, to award the costs of said attachment against the plaintiff, and to enjoin the plaintiff from securing, or attempting to secure, a preference in any manner over the other creditors as to the payment of his claim. This petition was granted as prayed, and final judgment was then rendered in favor of the plaintiff for the amount of his claim.

The only error assigned relates to the order of the court upon said petition. That this action of the court may be reviewed by this court on writ of error, see *Wehle v. Kerbs*, 6 Colo. 167. The proceeding had in the district court is somewhat anomalous. This petition cannot be considered a motion to discharge the attachment on the ground that the writ was improperly issued; for such a motion must be based upon matter "appearing upon the face of the papers and proceedings in the action." Code, § 115. It may more properly be considered a petition of intervention. Code, § 103. But whether the receiver, who was already a party defendant to the action, was thus entitled to intervene, we need not stop to inquire, as no objection appears to have been taken to the petition. The objection made goes to the order of the court thereon. By the laws of this state corporations may sue and be sued the same as individuals. But it is contended that the insolvency of a corporation constitutes an exception to this rule. No statutory provision has been referred to which makes such exception, and we have no knowledge that any such provision exists. Insolvency alone does not prevent a corporation from transacting business. In Mor. Priv. Corp. (2d ed.) § 786, it is said: "The insolvency of a corporation does not, *per se*, put an end to

the power of the company to manage its assets, or fix the lien of creditors upon the specific property in hand." The creditors of a corporation are not deprived of their legal remedies against it by reason of its insolvency. No action lies against a corporation, as such, after its dissolution. But before dissolution, and until some action is taken in court, which, in its nature and effect, may operate to restrain or defeat the right so to do, creditors of a corporation are at liberty, and have the right, to pursue the remedies provided by law for the collection of demands justly due to them from such corporation, unless they have in some way deprived themselves of such right. The remedy by attachment is one of the remedies so provided by law. In this case the attachment levy was made seven days before the suit was brought in which Talbot was appointed receiver. This levy created a lien in favor of the plaintiff, which could not be destroyed by any subsequent proceeding, except the dissolution of the attachment, or some act or default of the plaintiff. *Emery v. Yount*, 7 Colo. 107; Drake, Attachm. § 224. " The general rule appears to be that, after the lien of an attachment has vested upon the property of a corporation, it will not be divested by subsequent proceedings for winding up the company, unless the contrary be expressly provided." Mor. Priv. Corp. (2d ed.) § 864. There is no provision to the contrary in the statutes of this state. To the same effect are the following authorities: *In re Iron Works*, 20 Fed. Rep. 674; *Hubbard v. Bank*, 7 Metc. 340; *Life Ass'n v. Fassett*, 102 Ill. 315; High, Rec. § 138. That the property and effects of a corporation constitute a trust fund in favor of creditors, upon which they have a lien in equity, or a right of priority of payment, in preference to the stockholders, is a principle well established in equity jurisprudence. Such principle, however, was not applicable to the facts of this case. It required the aid of equity to enforce such right or lien, and no such aid was

invoked before the attachment lien in favor of the plaintiff was created.    Under the facts here presented, this lien in equity of the creditors of said bank did not possess such force or character, at the time the attachment levy was made, as to prevent a lien from attaching in favor of the plaintiff by reason of his said levy.    It was not a lien upon specific property, like that of an execution or attachment lien, but a right, simply, of said creditors to priority of payment out of such trust fund in preference to any of the stockholders.    Story, Eq. Jur. § 1252.    It was a right which, without action, and without the aid of equity, lay, as it were, dormant.    The hardship, if any, exists, to those creditors who remained inactive, is one of their own creation or sufferance.    The *pro rata* provision of the attachment act was then in full force, and open to them.    The law rewards the diligent.    Those who sleep upon their rights have their own laches to blame for that which follows.

The point made that the attachment lien, if any, in so far as it would affect the rights of the receiver, dates from the time of filing the amended attachment affidavit, is not tenable.    It relates back to the date of levying the attachment writ.    There was personal service in this case on the corporation, and we see no good reason for disturbing the final judgment which was rendered in favor of the plaintiff.    *Brown v. Tucker*, 7 Colo. 30; *Wehle v. Kerbs*, 6 Colo. 167.

The action is based upon a certified check, payment of which had been refused.    One of the causes for attachment alleged in the amended affidavit, which has not been traversed or denied, is "that the action is brought upon an instrument of writing overdue, and for the direct payment of money;" and this constitutes a good cause for attachment.    Counsel for defendants admit, in their argument on file in this court, that such cause existed, and that the same could not, in truth, be denied.

The cause is therefore reversed and remanded, with in-

structions to permit the final judgment in favor of plaint-
iff to remain as it is; to vacate the order discharging the
attachment, and enjoining the plaintiff, as likewise the
order adjudging the costs of the attachment proceedings
against the plaintiff; to award such costs in pursuance of
law and of the practice in such cases; and to make any
and all other orders in the premises which may be neces-
sary, if any, to restore the attachment lien, and protect
the rights of the plaintiff.

Rising and Stallcup, CC., concur.

Per Curiam.   For the reasons assigned in the forego-
ing opinion the judgment is reversed and the cause re-
manded, with directions to proceed in manner indicated
in the opinion.                                        *Reversed.*

### ON PETITION FOR REHEARING.

Per Curiam.   This case involves the same point which,
with others, has just been considered and determined
upon a petition for a rehearing in *Jones v. Bank*, 10 Colo.
464; that is to say, whether the assets of an insolvent
corporation constitute a trust fund for ratable distribu-
tion among its creditors, and whether an equitable lien
thereon exists in favor of all the creditors, from the com-
mittal of the act of insolvency, which will protect the
property from any liens afterwards attempted to be ob-
tained by individual creditors.   Our conclusion is that no
such equitable lien exists, and that, until a court of equity
has lawfully assumed jurisdiction of the insolvent estate,
creditors have the same remedies for the collection of
their respective demands as they might have against
individuals.   The rehearing is denied.

                                        *Rehearing denied.*