[No. 5420.]
[No. 3078 C. A.]

## CURTIS, JONES & CO. ET AL. v. SMELTER NATIONAL BANK ET AL.

1. **Corporations — Incorporation of Existing Business—Assumption of Debts.**

 Where an individual carrying on business organizes a corporation to continue it, and, after transferring the business to the corporation in exchange for stock, as president, manager and principal stockholder, carries on the same business in the corporate name, the books kept in his private business being continued as the books of the company, so that there is merely a change from doing business in one capacity to that of the other, the corporation becomes presumptively liable for the pre-existing debts of the business, without an express agreement to assume the same, and therefore can properly execute its note to a bank in exchange for the bank's note of the individual, given to secure money used in such business.—P. 397.

2. **Same—Corporations—Preference to Creditors.**

 A corporation, though insolvent, in the absence of legislative prohibition, may prefer one of its creditors to another.—P. 400.

3. **Corporations—Relation to Creditors.**

 A corporation, as between itself and its creditors, is simply a debtor, and does not hold its property in trust or subject to a lien in their favor, although insolvent, until the jurisdiction of a court of equity has been properly invoked and lawfully exercised in protecting such assets and in administering its affairs. —P. 400.

*Appeal from the District Court of La Plata County. Hon. James L. Russell, Judge.*

Action in the nature of a creditor's bill by Curtis, Jones & Company, Z. T. Lindsey and Chris Heer against the Smelter National Bank and The F. L. Chase Shoe Company. From a judgment for defendants, plaintiffs appeal. *Affirmed.*

Messrs. PERKINS & MAIN, for appellants.

Mr. B. W. RITTER and Mr. EDGAR BUCHANAN, for appellees.

This is an action in the nature of a creditor's bill prosecuted by appellants against appellees to subject certain property transferred by The F. L. Chase Shoe Company to the Smelter National Bank to the payment of certain judgments recovered by the appellants respectively against the shoe company.

The cause was tried to the court, and judgment was rendered in favor of appellees for costs.

From this judgment, appellants prosecute a joint appeal, and jointly assign errors thereto.

The facts pertinent to the issues joined in the pleadings, as disclosed by the record, are, in substance, as follows:

On July 1, 1893, F. L. Chase engaged in the shoe business in the city of Durango. He purchased, at about fifty cents on the dollar, on what was considered a very low inventory, a stock that was known as the De Cow stock of merchandise, and another known as the Kine stock. Chase had but a few hundred dollars, and he borrowed from the Smelter National Bank through its president, Charles E. McConnell, who had known him from boyhood and had confidence in his business ability, $4,000 to pay the purchase price of these stocks. Thereafter he bought three more stocks of merchandise at forced sales, and, as he thought, at rare bargains; and on his representation to the bank that he was buying these stocks cheaply, the bank advanced him further money. Between July, 1893, and October, 1894, his indebtedness to the bank had increased $500. All his indebtedness to the bank in October, 1894, had been incurred in the purchase of these stocks of goods and in conducting this particular business. On the 20th of October, 1894, after consulting Mr. McConnell, Chase caused to be incorporated The F. L. Chase Shoe Company. The articles of incorporation were signed and acknowledged by F. L.

Chase, Charles Barton and Joseph Steineger, with a capital stock of $10,000, divided into shares of the par value of $10 each. Chase transferred to, and this corporation took over the stock in trade and business theretofore conducted by Chase, and issued 998 shares of the capital stock to him and one share each to Barton and Steineger. Chase, as president and manager, continued in control and management of the business. On October 23, 1894, the corporation took up the notes of Chase at the bank and substituted the note of the corporation, amounting to $4,500, signed by him as surety. The note from the company to the bank drew 12 per cent. interest, and the amount was never reduced, but increased from time to time until, on February 12, 1896, the total indebtedness amounted to $6,653, of which amount $5,205 was the amount originally owed by Chase to the bank, with interest thereon. Curtis, Jones & Company and Z. T. Lindsey were creditors of Chase individually at the time of the transfer to the corporation. Their claims were paid by the corporation. Curtis, Jones & Company accepted the note of the corporation for part of its indebtedness, and afterwards collected the note from the corporation. All the other indebtedness incurred by Chase in the conduct of the business due at the time of this transfer was paid by the corporation before February, 1896, except the indebtedness due the bank. On February 12, 1896, The F. L. Chase Shoe Company transferred all of its assets of every description, including the stock in trade, fixtures and book accounts, to the Smelter National Bank, in payment of its indebtedness, the consideration of such transfer being the cancellation and surrender of all the notes held by the bank, amounting to over $6,653. The bank took immediate and exclusive possession of the stock of goods, and afterwards

realized from the property $5,100. Immediately after the sale to the bank Z. T. Lindsey, one of the appellants herein, instituted an action against the shoe company, and caused an attachment to be issued and levied upon part of the identical goods turned over to the bank. The bank brought its action against the sheriff for the recovery of the property so levied upon, which action was tried to a jury in the district court and verdict therein was rendered in favor of the bank, and final judgment entered thereon. The case of Lindsey against the shoe company proceeded to judgment against that company for $730.11 and costs. Curtis, Jones & Company and Chris Heer, the other appellants, also recovered judgment against The F. L. Chase Shoe Company on their respective claims. Executions were issued on these judgments, and duly returned *nulla bona;* whereupon the present action was instituted as above stated.

Mr. JUSTICE GODDARD delivered the opinion of the court:

The contention of counsel for appellants is, that the corporation executed its note to the bank in lieu of the individual note of Chase and as a substitute therefor, without authority and without receiving any consideration therefor; that no agreement is shown on the part of the corporation that it would, as a part consideration for the transfer of the goods, pay the individual indebtedness of Chase that had been theretofore incurred by him in the conduct and management of the business; in other words, that the sole consideration for the transfer of the merchandise and business to the corporation was the issuance of the capital stock of the company; and not until three days after the transfer had been made and without any meeting of the board of

directors did Chase take up his own note to the bank
and substitute that of the company, with himself as
surety, thereby diverting the company's assets to
satisfy his individual debt to the company, with
knowledge of such fact on the part of the bank.

On the other hand, counsel for appellees contend
that it appears from the evidence of McConnell and
all the circumstances surrounding the transaction at
the time of the transfer, that the corporation took
over the business theretofore conducted by Chase,
and assumed all the indebtedness that had been in-
curred by him in transacting the same, including the
indebtedness to the bank, and that, in pursuance of
such understanding or agreement, the corporation
had paid all of the individual debts of Chase so in-
curred, including the claims of Curtis, Jones & Com-
pany and Z. T. Lindsey, two of the appellants here-
in, who were creditors of the corporation at that
time.

These diverse views of counsel were presented
by the issues made in the pleadings, and, after hear-
ing the testimony of the witnesses in regard to the
details of the transaction in the light of the circum-
stances surrounding it, the trial court, by its general
finding and judgment, determined all questions of
fact in favor of appellees, and necessarily found that
The F. L. Chase Shoe Company rightfully and
legally assumed the indebtedness due the bank and
did not divert the assets of the company to the satis-
faction of the individual indebtedness of F. L.
Chase, its president.

It cannot be denied that the shoe company at-
tempted to assume and pay the individual indebted-
ness of Chase to the bank, as well as all other indebt-
edness incurred by him in the conduct of the busi-
ness which the corporation succeeded to. As a part
of the transaction, it executed the company's note in

lieu of the individual note of Chase, and assumed and paid the debts of two of the appellants. Its right to bind itself by an express promise to do so is recognized by all the authorities.

In 10 Cyc., p. 1111, subd. d, the rule is thus stated:

"Where a partnership is incorporated, and the corporation takes over the assets and the business of the partnership, the corporation has power to assume the debts of the partnership; and the rule is the same where a corporation takes over the business of an individual." And in its support, cases are cited from Connecticut, Canada, California, Iowa, Massachusetts, Pennsylvania and Wisconsin.

As we understand counsel for appellants, they do not question this rule, but insist that there must be an express verbal or written agreement to evidence the intention or understanding on the part of the corporation to assume such debts.

*Durlacher v. Frazer,* 8 Wyo. 58, 55 Pac. 306, supports this contention; but we think the better reason, as well as the weight of authority, are to the effect that, when the business and assets are bodily swept into the corporation and the same business is continued under the new name, the presumption and inference is that the debts are assumed.—*The Bremen Sav. Bank v. The Branch-Crookes Saw Co.,* 104 Mo. 425, 16 S. W. 209.

On page 346, volume 1, Clark and Marshall on Private Corporations, the author states the rule as follows:

"When a corporation formed by and consisting of the members of a partnership takes a conveyance or assignment of all the assets of the partnership for the purpose of continuing the business, it is to be presumed that it has assumed the partnership debts, and it is *prima facie* liable therefor."—*Reed*

*Bros. Co. v. First Nat. Bank of Weeping Water,* 46
Neb. 168; *Hall v. Herter Bros.,* 90 Hun. (N. Y.) 280,
157 N. Y. 694; *Williams v. Colby,* 6 N. Y. Supp. 459;
*Andres v. Morgan,* 62 Ohio St. 236; Beach on the
Law of Private Corporations, § 360.

In *Austin v. Tecumseh Nat. Bank,* 49 Neb. 412,
68 N. W. 628, Post., C. J., challenged the strict accu-
racy of this statement in view of the omission there-
from of any reference to the purpose or character
of the transaction contemplated, or the consideration
therefor.   He said:

"We shall not attempt a review of the cases
cited in the note accompanying the foregoing text,
or in the briefs submitted herewith.   It is sufficient
that they may, in our judgment, be thus classified:
(1) Cases in which the liability of the new corpora-
tion results, not from the operation of law, but from
its contract relation with the old; (2) cases, like
*Hibernia Ins. Co. v. St. Louis & N. O. Transp. Co.,*
13 Fed. 516, in which the transfer of the property
and franchise amount to a fraud upon the creditors
of the old corporation; (3) cases where, as in *Reed
v. Bank, supra,* the circumstances attending the cre-
ation of the new corporation, and its succession to
the business, franchise and property of the old, are
such as to raise the presumption or warrant the find-
ing that it is a mere continuation of the former—
that it is, in short, the same corporate body under a
different name.   And the facts upon which such
finding or presumption depends will not be pre-
sumed, but should affirmatively appear from the
pleadings and proofs."

The case under consideration comes clearly
within the third subdivision.   Chase was carrying on
the business as an individual; after the transfer he,
as president, manager and principal stockholder,
carried on the same business in the corporate name.

The books kept in his private business were continued as the books of the company. There was simply a change from doing business in one capacity to that of another.

As was said in *Andres v. Morgan, supra,* a case very like, in its facts, to this case:

"All that the corporation paid for the property transferred to it was the stock issued in exchange—simply a metamorphosis of a partnership into a corporation, without any change of individuals, and, unless it assumed the payment of the debts of the firm, there was no consideration for the transfer of the property, for the stock without the property represented nothing and was worth nothing. That a corporation could be formed and, with its capital, purchase a partnership and its business without being liable for its debts unless expressly assumed, is not doubted; but this is not such a case. This is like the case of *Reed Brothers Company v. First National Bank,* 46 Neb. 168, where a partnership, engaged in a general mercantile business, in straitened and failing circumstances, incorporated, and the assets and business of the partnership were transferred to the corporation and appropriated to its object and purpose, the business of the partnership being continued by the corporation, it was held that the corporation was presumptively liable for the partnership debts. See 2 Cook on Stockholders, § 669, and note 3; Mor. Corp., sections 791 and 812; *Broughton v. Pensacola,* 93 U. S. 266-270; Beach on Priv. Corp., § 360.

"There was, in fact, no purchase in this case; it, as shown, was simply a change from doing business in one capacity to that of another—the same persons changed from partners to corporators—and this distinction reconciles many cases on the subject, that might otherwise seem in conflict."

In the circumstances of this case, therefore, it is immaterial whether the evidence discloses an express agreement on the part of the corporation to assume the debts of Chase incurred in his individual capacity in the identical business to which it succeeded. It was at least presumptively liable therefor; and the payment of all other claims of its then creditors and the execution of its note to the bank in lieu of the individual note of Chase, was a recognition of its legal obligation to pay these debts and of its agreement so to do, and confirms the statement of the witness, McConnell, that he knew the purpose was "that all of Chase's assets were to go into the new company and, of course, the liabilities followed."

There is no ground for the contention that the sale and transfer of the goods had been completed before the debt was assumed, and that the assumption of it was purely voluntary. Mr. McConnell testified, and there is no testimony to the contrary, that at the time the transfer took place the bank surrendered Chase's notes and took the notes of the company, and from all the evidence it clearly appears that the corporation, at the time of the transaction and as a part of it, assumed not only this debt, but, as before stated, all the debts that had been incurred by Chase in the business.

We are satisfied that the court below correctly found, upon all the evidence, that the transaction was free from fraud and that the corporation, in good faith and for a valuable consideration, assumed the debt of the bank; and, although its records do not show a formal direction by the board of directors to its president to execute the note, we think, in view of the whole transaction, the note as executed became and was the legal obligation of the company

and that it had the right to transfer its assets to the bank in satisfaction and payment of the same.

The right of a corporation to make such preference in the absence of legislative prohibition is too well settled to require the citation of authorities; and it is also settled beyond controversy in this state that as between itself and its creditors, the corporation is simply a debtor, and does not hold the property in trust or subject to a lien in their favor, although insolvent, until the jurisdiction of a court of equity has been properly invoked and lawfully exercised in protecting such assets and in administering its affairs.—*Breene v. Merchants' and Mechanics' Bank,* 11 Colo. 97; *Jones v. Bank of Leadville,* 10 Colo. 464; *West v. Hanson Produce Co.,* 6 Colo. App. 467; *Farwell v. Sweetzer,* 10 Colo. App. 421.

In the view we have taken of the foregoing questions, it becomes unnecessary to determine whether, for other reasons advanced by counsel for appellees, the judgment complained of cannot be disturbed on this appeal.

For the reasons given, it will be affirmed.

*Affirmed.*

Chief Justice Steele and Mr. Justice Bailey concur.