229 F.2d 413
 WESTERN SPRING SERVICE CO., Inc., a corporation, J. A.
Hingley Machine Company, a partnership, J. A. Hingley
Machine Company Trust, a business trust, Cecil D. Hingley,
Ernest A. Hingley, Josephine M. Hingley, Nell M. Hingley and
Alice M. Hingley, Appellants,
v.
Merrill ANDREW, Appellee.
WESTERN SPRING SERVICE CO., Inc., a corporation, J. A.
Hingley Machine Company, a partnership, J. A. Hingley
Machine Company Trust, a business trust, Cecil D. Hingley,
Ernest A. Hingley, Josephine M. Hingley, Nell M. Hingley and
Alice M. Hingley, Appellants,
v.
Catherine ANDREW, Appellee.
 Nos. 5107, 5108.
 United States Court of Appeals Tenth Circuit.
 Jan. 3, 1956.
Rehearing Denied Feb. 2, 1956.
 
 Lowell White and H. Berman, Denver, Colo. (Walter A. Steele, Denver, Colo., on the brief), for appellants.
 Margaret R. Bates, Denver, Colo. (Yegge, Bates, Hall & Shulenburg, Denver, Colo., on the brief), for appellees.
 Before BRATTON, Chief Judge, HUXMAN, Circuit Judge, and CHRISTENSON, District Judge.
 HUXMAN, Circuit Judge.
 
 
 1
 Both of these cases were actions in the United States District Court for the District of Colorado, to recover damages because of personal injuries suffered by the plaintiffs. In Number 5107, appellee, Merrill Andrew, was plaintiff, and in Number 5108, appellee, Catherine Andrew, was plaintiff. The two cases were consolidated for trial in the court below and are likewise consolidated on appeal. Reference to the facts, therefore, will be as though only one case were involved. A somewhat detailed statement of facts is essential to the clarification of the issues presented for our determination.
 
 
 2
 William N. Morehouse and his son, Kenneth Morehouse, operated a truck line for the hauling of freight. Among their trucks they had a Kenworth Diesel tractor. Morehouse bought a Brown Lipe transmission and delivered the truck to Western Spring Service Company[1] in Denver to have this transmission installed. To do this it was necessary to shorten the drive shaft. Western Spring sent the drive shaft to Hingley Machine Shop[2] in Denver, Colorado, to shorten the shaft and then weld it together. The job was completed about June 30, 1948, and was turned over by Western Spring to Morehouse who used the outfit thereafter. On August 21, 1948, George C. Allen, a driver for Morehouse, was on a trip pulling a trailer on a highway near Omaha, Nebraska. Mr. and Mrs. Andrew had stopped their automobile along the highway and were sitting along the highway eating a picnic lunch. As this outfit came opposite where they were eating their lunch, the drive line was torn from beneath the truck, parts of broken metal were hurled to the side of the road with great force, striking Mr. and Mrs. Andrew and inflicting serious injuries on them.
 
 
 3
 The Andrews thereafter instituted actions against Allen, the driver of the truck, Kenneth W. Morehouse, the owner thereof, and William N. Morehouse, operator of the trucking business, in the Nebraska state courts, charging them with negligence in the operation of the truck and seeking recovery of damages for their injuries. These actions came on for trial about May 1, 1950. After one witness was called, a compromise settlement was made between the parties and Markel Service, the defendant's insurance carrier.
 
 
 4
 Thereafter the Andrews signed instruments of settlement calling for the payment of $7,000 to Andrew. On the same day an instrument called 'Loan Agreement' was executed. After the covenants not to sue were delivered and the $7,000 was paid, the actions in the Nebraska state court were dismissed.
 
 
 5
 Thereafter these two actions were instituted in the United States District Court for the District of Colorado. Both complaints named the same defendants. These were the Western Spring Service Company, Inc., J. A. Hingley Machine Company, a partnership, J. A. Hingley Machine Company Trust, Cecil D. Hingley, Ernest A. Hingley, Josephine M. Hingley, Nell M. Hingley and Alice M. Hingley. It was alleged that Cecil D. Hingley and Ernest A. Hingley were the members of the partnership and that they together with Josephine M. Hingley, Nell M. Hingley and Alice M. Hingley were the trustees of the trust and that Cecil D. Hingley was President and Ernest A. Hingley was the Treasurer of the trust.
 
 
 6
 Both complaints set out the same facts upon which the causes of action were predicated. In general it was alleged that pursuant to the order of Kenneth Morehouse to Western Spring, it and the Hingley partnership made certain alterations in the Kenworth Diesel tractor-trailer-truck, including the installation of a Brown Lipe auxiliary transmission which required the shortening of the drive shaft of the tractor; that to carry out this change it was necessary to cut off a part of the hollow shaft and reinsert and reweld the spline or spindle therein. It was alleged that the parties failed to exercise reasonable care in performing this work; that they did this work in an unskillful, careless and negligent manner and delivered the truck-tractor to its owner in a dangerous condition by reason of the faulty, weak and insufficient weld which they had made and caused to be made in the drive shaft. The Hingley Trust was joined as a party defendant as the successor to all the assets and liabilities of the Hingley Partnership.
 
 
 7
 It was further alleged that the welding was done by the partnership; that Western Spring did not inform plaintiff that the welding was to be done by the partnership; that Western Spring put out as its own product the entire job and caused the same to be used by the owner in reliance upon the supposed care of Western Spring in making the alterations. It was alleged that Western Spring negligently failed to make adequate and proper inspection of the weld and drive shaft after it was returned for installation in the truck-trailer.
 
 
 8
 The complaint recited that while the truck was being operated upon the highway and as it came opposite where the plaintiffs had stopped to eat their lunch, because of the defective weld the weld broke and by reason thereof the drive shaft was hurled from the truck striking plaintiffs with serious injuries to them.
 
 
 9
 The case was tried to a jury. A great deal of evidence was introduced; the jury returned a verdict specifically finding all the defendants liable and fixing the amount of damages suffered by plaintiffs. Motions for judgment for defendants notwithstanding the verdict and motions for new trials were overruled and judgment was entered on the verdict.
 
 
 10
 While the record designates thirteen specifications of points to be relied upon for reversal, the briefs reduce the points upon which the parties rely to the following:
 
 
 11
 (1) There was no evidence to sustain the verdicts;
 
 
 12
 (2) the so-called Covenant Not to Sue and the loan receipt agreements
 
 
 13
 (a) constituted a release of one joint tortfeasor and thus operated as a release of these appellants;
 
 
 14
 (b) constituted an assignment of the claims to Markel Service, Inc., the truck owner's insurance carrier; and(c) because of the execution of such instruments plaintiffs were not the real parties in interest;
 
 
 15
 (3) the court erred in refusing to give the instructions A through L tendered by all the defendants except Western Spring;
 
 
 16
 (4) the court gave erroneous instructions; and
 
 
 17
 (5) the court erred in instructing the jury that recovery could be had against the Hingley Trust.
 
 
 18
 We consider first the assignments that are common to all the appellants. The contention that there is no evidence to sustain the verdict of the jury need not be considered at great length. The act of negligence charged against the Hingley partnership which did this work was that it negligently and improperly welded the drive shaft and that this defect was the proximate cause of the accident. Western Spring as principal was also charged with this act of negligence, and in addition thereto it was charged that when the truck was returned to it, it failed to make a proper inspection of the weld as it was required to do, before delivering the truck to the owner. Hingley Trust was charged with the negligence of the partnership as the alleged successor to all of its assets and liabilities.
 
 
 19
 There is a great deal of conflicting testimony with respect to the nature and character of the weld. Since the question is the sufficiency of the evidence to take this question to the jury, under universally recognized principles of law, we consider only the evidence which tends to support the verdict. Appellees offered the testimony of John F. Jackson, William Dodd, Lloyd G. Erickson, and W. H. Campen. There can be no question as to their competency or qualification in the art of welding. They all examined the weld in question, and they all criticised the weld and in one form or another testified that it was defectively done and that this in their opinion was the cause of the break of the shaft. Of course, there was testimony to the contrary by appellants' witnesses. This merely created a conflict which it was the duty of the jury to resolve; and it resolved the conflict in favor of appellees' witnesses. Without more, there was in our opinion ample testimony to take the case to the jury, and the court, therefore, correctly overruled the motion for judgment for appellants notwithstanding the verdict.
 
 
 20
 It is seriously contended that the court erred in withdrawing from the jury the question of whether the two agreements between the injured plaintiffs and the insurer of the owners of the truck involved in the accident constituted a release of one joint tortfeasor. The agreements are clear and unambiguous. We agree with the statement in Tankersley v. Lincoln Traction Co., 101 Neb. 578, 163 N.W. 850, where the Nebraska court said that the legal effect of such settlements was for the court and not for the jury. In our view the court did not err in refusing to submit this question to the jury for its consideration.
 
 
 21
 Neither did the court err in construing the 'Covenant Not to Sue' agreement as not constituting a release of one joint tortfeasor. The instrument recited that for a consideration Andrew agreed to refrain forever from instituting, prosecuting or in any manner aiding any suit or claim against George Allen, Kenneth W. Morehouse and William N. Morehouse, their successors or others to whom they might be liable because of this accident. It provided that the payment 'of said amount is not to be construed as an admission of liability upon the part of said persons, firm or corporation; liability being by him or them expressly denied.' It also reserved unto the Andrews the right to proceed against others than the parties to that instrument and said that it was further 'expressly understood and agreed that this instrument is and is to be construed only as a covenant not to sue and is not to be construed otherwise.'
 
 
 22
 While the distinction between a covenant not to sue and a release of one tortfeasor may be somewhat nebulous and difficult to define with exactness and precision, courts almost universally recognize and give effect to such distinction.[3] The difference is stated in 4 Restatement, Torts § 885 as follows:
 
 
 23
 '(1) A valid release of one tortfeasor from liability for a harm, given by the injured person, discharges all others liable for the same harm, unless the parties to the release agree that the release shall not discharge the others and, if the release is embodied in a document, unless such agreement appears in the document.
 
 
 24
 '(2) A covenant not to sue one tortfeasor for a harm does not discharge any other liable for the harm.'
 
 
 25
 These contracts were made in Nebraska and would be controlled by the law of that state. Whether they are to be construed as a release or a covenant not to sue and a loan agreement depends upon the intent of the parties since that is the controlling factor.[4] We think the court correctly construed the 'Covenant Not to Sue' agreement as being just what it purported to be and not a release.
 
 
 26
 Neither do we think a consideration of the 'Loan Agreement' alone or together with the 'Covenant Not to Sue' agreement requires a contrary conclusion. There are a great number of cases where an insurance carrier made a loan to its insured under an agreement to sue a tortfeasor and repay the loan out of a recovery in such action. With but few exceptions the courts have upheld such agreements. Such was the factual situation in Luckenbach v. W. J. McCahan Sugar Refining Co., 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170, upon which state courts generally rely in upholding such agreements, although their facts do not always plumb with the facts in the Luckenbach case.
 
 
 27
 Very few state courts have considered loan agreements such as we are considering here. Apparently Nebraska has never passed upon the precise question and we must, therefore, look elsewhere for the answer. Colorado, where this action was filed, has upheld such a loan agreement upon facts almost identical to the facts in this case. See Wilson v. Anderson, Colo., 157 P.2d 690. There William H. and Helen Anderson sued two defendants to recover damages for injuries allegedly caused to them. After the institution of the action the insurance carrier for one of the defendants advanced to the plaintiffs the sum of $629.35 on a loan agreement substantially the same as the one before us. While there is some confusing language in the opinion, the court did state that, even assuming that the Storage Company, the defendant for whose benefit the payment was made by its insurance carrier, was a joint tortfeasor with the other defendant, the loan agreement did not constitute a release. In Klukas v. Yount, 121 Ind.App. 160, 98 N.E.2d 227, an automobile driven by Klukas and one driven by James Lyle collided in an intersection with resulting injuries to Yount. The insurance carrier for Lyle loaned $2,500 to Yount on a loan agreement such as we have here, providing that Yount should institute an action against Klukas and repay to insurance carrier out of any recovery the sum so advanced. The court held that the arrangement was a valid loan agreement and did not constitute a release of one joint tortfeasor. It is our conclusion that the doctrine announced in Wilson v. Anderson and Klukas v. Yount, supra, lays down the correct rule to which we adhere.
 
 
 28
 It is asserted that during a recess Mr. Skinner, a juror who became foreman of the jury, bought a magnifying glass, took it to the jury room, and during the deliberations used it in examining the weld and loaned it to other jurors to examine the weld on the exhibit which had been sent to the jury room. It is contended that this constituted misconduct on the juror's part. With this contention we cannot agree. It no more constituted misconduct on the juror's part than it would have been misconduct for him to exchange his regular glasses for more powerful glasses to enable him to better see or more accurately determine the nature of the weld or of the break. Nor did his loaning this magnifying glass to other jurors to enable them to see better constitute misconduct anymore than if he had loaned his regular glasses to a juror, or raised a shade to admit more light to enable the jurors to better examine the exhibit in question.
 
 
 29
 Furthermore, the affidavit relied upon to establish the misconduct is the affidavit of Western Spring's attorney, reciting what the juror told him. It is, therefore, obviously hearsay and entitled to no consideration. But had the juror made the affidavit himself, setting out the facts which he told Western Spring's attorney, it would still have been inadmissible as it would tend to impeach the jury's verdict because of misconduct in the jury room, and this may not be done by the well established federal rule.[5]
 
 
 30
 The contention that the Hingley Trust is not liable for the tort committed by the partnership prior to its transfer of assets to the trust is predicated on the argument that this claim was unknown at such time; that it had not been asserted; that it was not listed on the balance sheets submitted to the trust and was not one of the liabilities assumed by the trust. There is no merit to this contention.
 
 
 31
 Even without an express assumption of this tort indebtedness by the trust, it would be liable under the well established rule that where a new business is a 'mere continuation' in slightly changed form of the prior business it will be held liable for the predecessor's debts.[6] All the known assets of the partnership were transferred to the trust. The partners together with their wives became the beneficiaries of the trust and were the trustees thereof. The business of the trust was identical to that of the partnership and was carried on at the same place and in the same manner. But it is not necessary to go that far in this case because the trial court submitted to the jury for its determination the specific question whether the trust did assume all the debts of the partnership, and the jury held that it did. That finding is supported by the record. Numerous cases have held that the assumption of all the indebtedness or existing liabilities includes unliquidated tort claims.[7]
 
 
 32
 It is further urged that the court erred in rendering judgment against the partnership as such because it was in fact dissolved when he assets and liabilities were transferred to the trust. 4 Colo.Stat.Ann. § 104-1-30 provides that 'On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed.' If appellants are correct in arguing that the trust did not assume this liability then the affairs of the partnership were not fully administered and under the above statute an action might be maintained against the partnership. In any event and assuming without deciding that the partnership was improperly joined, it is harmless error which does not require reversal of the judgment. If in fact the partnership has no assets and is a nonentity, then the judgment against a nonentity can do no harm. The individual partners were also named parties and certainly they cannot escape personal liability for the partnership debts if the partnership is no longer existent as such.
 
 
 33
 While appellants designated as error the refusal of the trial court to give their requested instructions A to L, inclusive, appellant, Western Spring, makes no reference to these instructions in its brief and appellants, the partnership and the trust, make reference only to requested instructions F, I and K.
 
 
 34
 The substance of appellants' request F, to the effect that plaintiffs could not base their cases upon a mere speculation or possibility of cause, and the substance of request K, to the effect that if there was an intervening cause plaintiffs could not recover even if the jury found there was negligence in the making of the weld, are not well taken. Aside from the fact the record fails to reveal that an exception was taken to the court's ruling and assuming without deciding that the requested instructions were adequate and correct, the court correctly instructed the jury with respect to all the essential elements necessary to establish plaintiffs' cause of action when it told the jury that 'the plaintiffs must establish each of the following elements by a preponderance of the evidence; First, that the weld in question was made by the Hingley Partnership; second, that the said partnership was negligent in failing to exercise ordinary care and skill in the making of the weld, and third that such negligence was the proximate cause of the plaintiffs' injuries.' The court further told the jury that if it believed 'that the plaintiffs have failed to establish by a preponderance of the evidence any one or more of the three elements I have just enumerated, your verdict must be in favor of the Hingley Partnership, and against the plaintiffs.' This was a correct statement of the law and was adequate to guide the jury in its deliberations.
 
 
 35
 Neither did the court err in refusing request I, to the effect that if the jury found for plaintiffs it should reduce the amount of the verdict by the amounts previously received by virtue of the written agreements in the state cases. Under the loan agreement plaintiffs were required to repay the sums advanced to them in the event that they recovered a judgment in these cases. Under such circumstances, the sums could not be considered in mitigation of damages. The cases of O'Neil v. National Oil Co., 231 Mass. 20, 120 N.E. 107, Solomon v. Dabrowski, 295 Mass. 358, 3 N.E.2d 744, 106 A.L.R. 464, and Bedwell v. DeBolt, 221 Ind. 600, 50 N.E.2d 875, upon which appellants rely do not require a contrary conclusion. In all of these cases the consideration for an agreement not to sue one tortfeasor was an unconditional payment and, as far the opinions reveal, no provision was contained for repayment in the event of the successful prosecution of a suit against another tortfeasor. While the court in those cases does not set out the reason why such sums must be applied in mitigation of damages, it no doubt was done under the principle of unjust enrichment, that the plaintiff was entitled to only one full compensation for the injuries suffered.
 
 
 36
 Affirmed.
 
 
 
 [1]
 Herein referred to as Western Spring
 
 
 [2]
 Herein referred to as Hingley
 
 
 [3]
 See Young v. Anderson, 33 Idaho 522, 196 P. 193, 50 A.L.R. 1057; American R. Exp. Co. v. Stone, 1 Cir., 27 F.2d 8, 66 A.L.R. 206; Colby v. Walker, 86 N.H. 568, 171 A. 774, 104 A.L.R. 846; Karcher v. Burbank, 303 Mass. 303, 21 N.E.2d 542, 124 A.L.R. 1298; and McKenna v. Austin, 77 App.D.C. 228, 134 F.2d 659, 148 A.L.R. 1270
 
 
 [4]
 Fitzgerald v. Union Stockyards Co., 89 Neb. 393, 131 N.W. 612, 33 L.R.A., N.S., 983. This case was followed in Hauth v. Sambo, 100 Neb. 160, 158 N.W. 1036; Tankersley v. Lincoln Traction Co., 101 Neb. 578, 163 N.W. 850; Menking v. Larson, 112 Neb. 479, 199 N.W. 823
 
 
 [5]
 McDonald v. Pless, 1915, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300; Loney v. United States, 10 Cir., 1945, 151 F.2d 1; Fabris v. General Goods Corp., 2 Cir., 1934, 152 F.2d 660, 661; Bateman v. Donovan, 9 Cir., 1942, 131 F.2d 759
 
 
 [6]
 Curtis, Jones & Co. v. Smelter Nat. Bank, 43 Colo. 391, 96 P. 172
 
 
 [7]
 Good v. Ferguson & Wheeler Land, Lumber & Handle Co., 107 Ark. 118, 153 S.W. 1107; Geiger v. Sanitary Farm Dairies, 146 Minn. 235, 178 N.W. 501; Ziemer v. C. G. Bretting Mfg. Co., 147 Wis. 252, 133 N.W. 139; See also Annotations 15 A.L.R. 1107; 149 A.L.R. 787