MIGUEL MERLE, Plaintiff and Appellant, *v.* WEST BEND COMPANY ET AL., Defendants and Appellees.

No. R-68-6. Decided June 9, 1969.

---

*Sánchez & Maldonado* for appellant. *McConnell, Valdés, Kelley & Sifre* and *José E. Bengoa Toro* for appellees.

Second Division composed of Mr. Justice Hernández Matos, as Chief Judge of Division, Mr. Justice Santana Becerra, Mr. Justice Dávila, and Mr. Justice Torres Rigual.

MR. JUSTICE TORRES RIGUAL delivered the opinion of the Court.

Under the authority of the provisions of Act No. 75 of June 24, 1964,[1] which regulates the termination of dealer's

---

[1] 10 L.P.R.A. § 278 *et seq.*

contracts, and of § 1802 of the Civil Code,[2] appellant Miguel Merle filed a complaint for damages against the appellees, West Bend Co. and Andrew Foti,[3] claiming the amount of $125,000. He alleged as cause of action that "subsequent to July 15, 1964, the defendants West Bend Co. and Andrew Foti, acting in concert, arbitrarily, wilfully and unjustifiably and without the plaintiff giving grounds for such action, conspired to deprive the plaintiff, as in fact they did, of his rights as dealer for Kitchen Queen of Puerto Rico."[4]

Both West Bend and Foti denied the allegations contained in the complaint, the latter claiming, besides, by way of counterclaim, certain amounts from Merle. Before the hearing of the case on the merits, appellant Merle and codefendant Foti made a compromise contract which served as ground for the trial court to declare appellant as having desisted from his action against Foti, and the latter from his counterclaim against the former. Appellant accepted the dismissal.

At this point, West Bend requested the dismissal of the complaint against it, alleging that according to the allegation contained in the aforementioned paragraph 7 of the complaint, West Bend and Foti were severally liable, and, that Foti having been released from liability by virtue of the compromise agreed upon between the latter and the plaintiff, such release benefited him as solidary debtor; for which reason the dismissal of the complaint against it lied.

The trial court granted the motion to dismiss and entered judgment accordingly. We issued the writ to review it.

The ground adduced by the trial court in order to decree the dismissal is that when the plaintiff receives indemnity from one of the joint tort-feasors and relieves the latter from liability, the other joint tort-feasor becomes equally released,

---

[2] 31 L.P.R.A. § 5141.

[3] The action against West Bend relied on the aforesaid Act No. 75, whereas the action against Foti was brought under § 1802.

[4] Paragraph 7 of the complaint.

the cause of action being thus extinguished. The court relied its conclusion on *García* v. *Government of the Capital*, 72 P.R.R. 133 (1951), and several cases of state jurisdictions. Interpreting the scope of *García* v. *Government of the Capital* the trial court stated in its judgment:

"What in effect the court decides is that when damages arise out of the combined negligence of two persons and the prejudiced plaintiff receives indemnity for damage caused by one of these 'joint wrongdoers' and by virtue thereof judgment is rendered releasing from liability the one who compensated him for damages, the other wrongdoer becomes, at law, equally released plaintiff's cause of action being thus extinguished."

We are convinced that the judgment is erroneous and should be reversed.

*García* v. *Government of the Capital* does not involve directly the question in controversy herein. In said case we recognized in our jurisdiction the right of contribution among joint wrongdoers. It dealt with an action for damages on account of a traffic accident. García brought action against the Government of the Capital and its insurer and the latter in turn filed third-party complaint against Ricardo Quintero and his insurer, alleging, besides, in the alternative, that if any negligence whatsoever intervened on the part of the Government of the Capital, likewise there was concurrent negligence on the part of the Government of the Capital and of Quintero both being joint debtors for any amount which could be adjudged by judgment and having mutual right to collect from Quintero half the amount as contribution. Then the third-party defendants filed a motion to dismiss the complaint against them, on the ground that plaintiff García had released and discharged them from liability through the payment of $500. The trial court granted the motion to dismiss the third-party complaint because it understood that in Puerto Rico the right of contribution did not exist and that, therefore, from the very moment in which one of the joint debtors

compromised, his liability became extinguished for all legal purposes.

We reversed that judgment on review recognizing, as we already said, the right of contribution between joint tort-feasors. We decided specifically that the release or discharge given by a plaintiff in favor of a third-party defendant, joint debtor, was tantamount to the waiver or remission mentioned in § 1099 of the Civil Code, 31 L.P.R.A. § 3110,[5] which did not release said third-party defendant from his liability to the other codebtors. In other words, *Garcia* v. *Government of the Capital, supra,* established the doctrine that the release or discharge of a third-party defendant, joint debtor, is no reason for dismissing the third-party complaint on the ground that the latter's liability was extinguished by virtue of the release. The proceeding, despite the release, continued against the third-party plaintiffs,[6] who of course, were the ones who brought the third-party complaint against the ones released so that the latter would be liable in contribution. The trial court could hardly rely its judgment on the decision in *Garcia.*

The cases from other jurisdictions cited by the trial court to support its conclusion are based upon an ancient rule of the common Anglo-Saxon law. Under said system of law, the release of a joint tort-feasor released the other joint tort-feasors irrespective of the intention of the parties and of sufficiency of cause. Prosser, Law of Torts, § 46 at p. 269 (3d

---

[5] Said section provides:

"The waiver or remission made by the creditor of the part affecting one of the joint debtors does not release the latter from his liability with regard to the codebtors in case the debt should have been paid in full by any of them."

[6] Although it was not directly involved, the head-note of *Garcia* v. *Government of the Capital* gathers what from this situation is obvious and which is, precisely, contrary to what the trial court decided.

"When damages arise out of the combined or concurrent negligence of two or more persons the fact that the plaintiff compromises with one of them which ever rights he might have against the latter and releases and discharges him of any liability, does not release the other defendants from their liability against the plaintiff. Section 1099, Civil Code, 1930 ed."

ed. 1964), Williston, On Contracts, § 333 at p. 685 (3d ed. 1959), Corbin, On Contracts, § 931 at p. 734. (1951). It was interpreted that the release equaled a full compensation, that is, it operated as an uncontrovertible assumption of payment which extinguished the obligation. It was so, although in fact no payment whatsoever would have been made and even when the intention of the parties did not contemplate the release of the other joint tort-feasors. The logical variance and the rationale meagerness of this rule caused great unsatisfaction which gave rise to severe criticism. Prosser, *Joint Torts and Several Liability*, 25 Calif. L. Rev. 413 (1937); Havighurst, *The Effect of a Settlement With One Co-Obligor Upon the Obligations on the Others*, 45 Cornell L.Q. 1 (1959); Wigmore, *Diversities de la Ley (sic)*, 17 Ill. L. Rev. 563 (1922); Corbin, *supra* at p. 736; Williston, *supra*, at p. 691; I Harper and James, Law of Torts 711–712. See also, *Release of One Joint Tort-feasor as Discharging Liability of Others: Modern Trends*, 73 A.L.R.2d 403, 407.

Prosser, *supra* at p. 425, states the following objections to said rule:

"The position that a release of one necessarily releases all seems most unreasonable. A release of one cause of action is not a release of another independent one. The essential question is whether the plaintiff's claim has been satisfied; and this is clearly a matter of the intent of the parties, to be determined in the light of the language of the instrument, the amount paid, and the surrounding circumstances. The objection that there may be double recovery is meaningless, for the amount paid under the release must be credited pro tanto to the second tort-feasor. Even as applied to cases of concerted action, the rule that a release of one releases all seems an antiquated survival of common law procedural notions; it has no justification at all in the case of mere concurrent negligence."

Corbin, *supra* at p. 736, describes it properly as a trap.

"The rule that the voluntary release of any one of a number of persons obligated for a single performance discharges all the

others operated as a trap into which many an obligee has fallen."

Williston, *supra* at p. 691, points out with effect:

"It is not easy to find a technically satisfactory reason for this latter rule. The reason given in the early cases is that a release is as complete a satisfaction in law as performance. But a release of one debtor is not necessarily a release or satisfaction of the debt itself. The creditor may or may not have received full satisfaction of his claim when he gave the release. If he received full satisfaction, he is of course denied further recovery, but if full satisfaction has not been received, there seems to be no reason why the case should be dealt with differently from one where several debtors are under several obligations."

*Breen* v. *Peck*, 146 A.2d 665 (N.J. 1958) stated:

"The rule was evolved when metaphysics rather than justice was the dominant factor and obviously tends to defeat the fair expectations and intentions of the parties to the release; it may be noted that all but one of the continental legal systems have flatly rejected it."

With a pragmatic sense—and definitively more equitable —at the present time the majority of state jurisdictions have extenuated the application of this rule, whether by legislative action or by legal interpretation. Williston, *supra* at p. 703. Some courts have come to the use of fictions and subtle distinctions in order to avoid its application, as when they pretend to distinguish the release from what is known as a covenant not to sue, which by its own merits is no other thing but a release with reservation of rights. *McKenna* v. *Austin*, 134 F.2d 659 (D.C. Cir. 1943); *Western Spring Service Co.* v. *Andrew*, 229 F.2d 413 (10th Cir. 1956); Corbin, *supra* at 744; Anno: *Release of One Joint Tort-feasor*, *supra* at 420.

To sum up, the modern trend in jurisdictions of common law in the United States is to abandon the strict application of this rule, and, to consider—as it is the rule under our Civil Code—the intention of the parties as controlling in the release of the other joint tort-feasors. Prosser, On Torts 272

(3d ed. 1964). See, *Release of One Joint Tort-feasor as Discharging Liability of Others, supra.*

 The intention of the parties is the essential test provided in the Civil Code to fix the scope of the contractual obligations. This test of intention is so essential in the interpretation of the contracts that the Code proclaims its supremacy in providing that the evident intention of the parties shall prevail over the words, even when the latter would appear contrary to the intention. Section 1233 of the Civil Code, 31 L.P.R.A. § 3471. The intention may be demonstrated by all means, not only by the acts, contemporaneous and subsequent to the contract, as § 1234 of the Civil Code, 31 L.P.R.A. § 3472[7] seems to indicate at first sight, but also by the previous acts, *Hoffman* v. *Cuadrado*, 14 P.R.R. 573 (1908); as well as by other circumstances indicative of the will of the parties. VIII-2 Manresa, *Comentarios al Código Civil Español* 500 (5th ed. 1950), II-1 Puig Brutau, *Fundamentos de Derecho Civil* 301 (1954), III Castán Tobeñas, *Derecho Civil Español, Común y Foral* 426 (9th ed. 1958). Puig Brutau judiciously favors the thesis that the judge must examine, not only the previous acts, contemporaneous or subsequent to the execution of the contract, but all the other concurrent circumstances, even though he considers that the parties have expressed themselves in clear terms. So he states in *Fundamentos de Derecho Civil, supra* at page 301:

"Some judgments (for example, the ones of February 4, 1927 and April 22, 1950) state that this § 1.282 has ancillary character in relation to the previous § 1.281, for which reason the first section cited should be the only one resorted to if the contract to

---

[7] Section 1234 provides:

"In order to judge as to the intention of the contracting parties, attention must principally be paid to their acts, contemporaneous and subsequent to the contract."

In addition to the foregoing, the Civil Code establishes other legal hermeneutics for the interpretation of contracts. See, §§ 1235 to 1240 of the Civil Code, 31 L.P.R.A. §§ 3473 to 3478.

be construed would offer some doubt in the literal sense of its clauses. But, in our opinion, the unquestionable character of the words used will only result as a consequence of having been confronted with whatever elements of judgment may be offered to the judge. Only if the literality of the expressions used is not altered, we will have to apply the first paragraph of § 1.281. We do not believe that a judge shall reject the examination of all the concurring circumstances because of the fact that he considers that the parties have expressed themselves in clear terms. Such a consideration shall only be fully grounded, precisely, after said examination."

■ Our Civil Code, foreseeingly, offers, with the test of the intention of the parties, a practical, rational, effective, and fair solution to fix the scope of the compromises and releases. Solution, which as we have seen, has already been adopted by the majority of the state jurisdictions in order to overcome the inequity of the common law rule. It was not necessary, then, to resort to norms or rules of other jurisdictions, which have been already abandoned as ineffective.

Following the wise patterns of the Civil Code, we will turn to examine the compromise made by appellant Merle and codebtor Foti in order to fix its true scope. By virtue of the compromise agreement, appellant and codefendant Foti assumed valuable reciprocal obligations, among them, the dismissal of various suits against each other.[8] They expressly agreed to desist from the complaint as well as from the counterclaim in this case, appellant binding himself, in the event that Foti were brought back into the case by the other defendant, to release Foti from liability for the purposes of any judgment which might be rendered against him. To those effects they agreed:

---

[8] The compromise agreed upon by the parties provides insofar as pertinent:

"WHEREAS; the parties have asserted certain claims against each other in connection with the aforementioned property and in connection

"In the event that Foti is brought back into the case by action of the other co-defendants, or in the event that Foti is adjudged responsible in any manner whatsoever to Merle or to others by reason of said suit, Merle shall at all times save Foti harmless from the results of said action and, if necessary, shall waive any judgment or right the exercise of which may result in an obligation on Foti's part, so that the latter shall at all times be saved harmless from any kind of obligations, claims, or duty resulting from said civil action, as aforesaid. Foti hereby agrees to desist from the counter-claim filed by him in said civil action and Merle agrees to assist Foti in retrieving and collecting the sample sets referred to in said counter-claim."

From the foregoing it appears, that appellant, by virtue of the valuable obligations appearing in footnote 8, desisted from his claim against Foti, releasing him from further liability, even when he were brought back into the case by appellee West Bend, or in any manner whatsoever he were adjudged responsible, whether to appellant or to any other person by reason of the suit. Furthermore, it was agreed that appellant waived any judgment or right from which responsibility on Foti's part could emanate.

---

with prior business relationship between them, which have resulted in various law suits now pending as follows:

"1. Civil Suit No. 65-2158, Superior Court of San Juan, Andrew Foti vs. Miguel Merle, etc., Foreclosure of Mortgage Thru Ordinary Proceedings, amount involved $4,000 principal, $680.00 for interest computed to July 9, 1965, plus $1,000 for attorney's fees total $5,680.00.

"2. Civil Suit No. 65-5453, Superior Court of San Juan, Miguel Merle, etc., vs. Andrew Foti, etc., Division of Community Property.

"3. Civil Suit No. 64-4271, Superior Court of San Juan, Miguel Merle vs. West Bend Co., U.S. Industries Consumer Products Corp. of Andrew Foti, Damages, amount claimed $125,000 plus $25,000 attorney's fees. There is a counter-claim for $70,930 plus $10,000 attorney's fees.

"4. Civil Suit No. 65-209, Superior Court of San Juan, Puerto Rico, Miguel Merle vs. Andrew Foti, etc., money action for $3,675 plus $500 for attorney's fees. There is the same counter-claim referred to in item 3, above.

"WHEREAS, the parties have reached an agreement to liquidate their respective claims, terminate all pending litigation and readjust their respective participation in the aforesaid real estate."

It is clearly inferred from the text of the agreement that there was no intention to release appellee, West Bend Co., since they specifically took steps in the event that Foti could be brought back to the suit by West Bend, or in any manner whatsoever he were adjudged responsible to the latter. Likewise, this measure indicates that they did not consider the compromise as a full reparation. The full reparation would have extinguished all liability, both Foti's to Merle and West Bend's to Merle, making the measure to release Foti in the event that the latter were adjudged liable to West Bend completely unnecessary. When they took such measure it was because they contemplated that the suit would continue against West Bend, and, that the latter could bring Foti so he would be liable in contribution. It is fitting to ask here, what effect did the absolute and definitive release of Foti with respect to his liability to appellee West Bend have, assuming that it would be finally decided that both—Foti and West Bend— were severally liable according to what is alleged in the complaint?[9] It is clear that the compromise agreement, between the appellant Merle and Foti, cannot injure the liability the latter might have with respect to West Bend, we repeat, in case that the liability of both to Merle would be several. The so absolute and definitive text of the release— ". . . in the event that Foti is adjudged responsible *in any manner whatsoever* to Merle or to others by reason of said suit, *Merle shall*

[9] The parties devote great efforts in their briefs to discuss the character of Foti's and West Bend's liability, whether joint or several. It is not necessary that we stop to consider this question in view of the fact that, in one case or the other, the conclusion we have reached would not be altered in any manner: that the compromise agreed between appellant and Foti does not release West Bend. Whether joint, by reason of the own nature of these obligations in which there exists a multiplicity of relationships, and, therefore, the compromise or release of one of the joint debtors extinguishes only the latter's relationship without affecting in any manner whatsoever the liability of the other joint debtors. Sections 1090 and 1091 of the Civil Code, 31 L.P.R.A. §§ 3101, 3102. Whether several, for what we have previously stated.

*at all times save Foti harmless from the results of said action
. . ."* (italics ours)—seems to indicate Merle's intention to assume the burden of any liability Foti could have to West Bend as consequence of this suit. It is incumbent, however, upon the trial court, after the evidence is presented, to fix the consequence and scope of the compromise agreement with respect to West Bend.

■ To sum up, we conclude that the compromise agreement made between appellant and Foti did not have the effect of fully releasing West Bend and that, therefore, the trial court erred in dismissing the complaint against West Bend by reason of the release.

For the reasons stated, the judgment rendered by the Superior Court of Puerto Rico, San Juan Part, on November 27, 1967, will be reversed and the case remanded to said court for further proceedings consistent with this opinion.