**George W. FLORUM, Plaintiff,**

**v.**

**ELLIOTT MANUFACTURING COMPANY, a Nebraska corporation, and Elliott Equipment Corporation, a Nebraska corporation, Defendants.**

**Civ. A. No. 83JM2187.**

United States District Court, D. Colorado.

March 10, 1986.

John W. Hornbeck, James A. Cederberg, Bragg & Dubofsky, P.C., Richard H. Glasman, Glasman, Jaynes & Carpenter, Denver, Colo., for plaintiff.

Deanna E. Hickman, Kutak Rock & Campbell, Denver, Colo., for defendant Elliott Mfg. Co.

James M. Dieterich, John M. Lebsack, White & Steele, P.C., Denver, Colo., for defendant Elliott Equipment Corp.

## ORDER

SHERMAN G. FINESILVER, Chief Judge.

THIS MATTER is before the Court on Defendant Elliott Equipment Corporation's Motion for Summary Judgment under Rule 56 Fed.R.Civ.P. The issue before the Court concerns the liability of a successor corporation for injuries sustained by a plaintiff through use of an allegedly defective product sold by the predecessor corporation. The Defendant, Elliott Equipment Company, asks the Court to determine a successor corporation's liability in a products liability case. The parties have thoroughly briefed the matter for the Court and we have carefully considered their respective arguments. We are of the view traditional theories of successor corporation nonliability prevail. The Motion for Summary Judgment is *GRANTED*.

Plaintiff, a resident of Colorado, contends that his injuries were caused by his use of a Hi-Reach hydraulic crane, more commonly known as a "cherry picker", manufactured by the Defendant Elliott Manufacturing Company and sold to the company for which the Plaintiff worked.

Defendant Elliott Equipment Corporation (New Elliott) purchased Elliott Manufacturing Company (Old Elliott) on July 31, 1972. New Elliott alleges since it did not manufacture the cherry picker, any claims against it for the Plaintiff's injuries must be premised on the theory that New Elliott is responsible for the liabilities of its predecessor, Old Elliott.

## I.

Under Rule 56, Federal Rules of Civil Procedure, and pursuant to Rule 603 of this Court's Local Rules of Practice, the matter was originally addressed by Magistrate Donald Abram who entered recommended findings of fact and conclusions of law on January 14, 1986. While we agree with the Magistrate that the Motion should be granted, we reach our conclusion based on somewhat different reasoning. Magistrate Abram set forth the undisputed facts as follows:

Elliott Manufacturing Company was a Nebraska corporation with its business located in Omaha, Nebraska. It produced industrial equipment including the high-reach hydraulic crane, better known as a "cherry picker". The unit was sold to Crawford Electric Company of North Platte, Nebraska on July 8, 1969. Joseph Kirkland, the owner and founder of Elliott Manufacturing Company, prior to his death, set up a trust to control the stock and manage the company for the benefit of his heirs. Three trustees operated the corporation until a dispute arose with the beneficiary under the trust. On May 1, 1972, the trustees resigned, and the matter was turned over to a state district court in Omaha, Nebraska. On June 21, 1972, the Nebraska court appointed the First National Bank of Omaha as trustee in order that the corporation stock be sold. On July 12, 1972, the court authorized the sale of the Elliott Manufacturing Company assets to Maynard B. Weaver and Stuart H. Borg. Weaver and Borg then incorporated a company entitled Elliott Manufacturing Co., Inc. on July 20, 1972. Elliott Manufacturing Co., Inc. entered into a purchase and sell agreement on July 27, 1972 with Elliott Manufacturing Company in accordance with the terms of a sales and purchase contract. The assets of the corporation were transferred on July 31, 1972. The patent was transferred to Stuart H. Borg and Maynard B. Weaver as part of the sale and not to the corporation. Elliott Manufacturing Co., Inc. continued to use the existing employees and not the corporate officers. None of the original board of directors or stockholders remained in the new corporation, nor was any stock provided to the old stockholders, directors, or officers. The high-reach hydraulic cherry picker Model EHE–75 was not being manufactured at the time of the sale. The company produces a different model of hydraulic crane. Elliott Manufacturing

Company dissolved after the sale pursuant to the laws of the state of Nebraska.

A review of the underlying documents establishes that these facts are an accurate representation of the transactions in this matter.

## II.

■■■ In a diversity action, a federal court must first decide which state law to apply. The choice of law is governed by the conflict of law rules of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). For conflict of laws purposes, products liability actions are viewed as tort law problems. See *Westric Battery v. Standard Electric Co., Inc.*, 482 F.2d 1307 (10th Cir.1973). With this in mind, under Colorado conflict of law provisions, the law of the state with the most significant contacts to the underlying tort must be applied. *Conlin v. Hutcheon*, 560 F.Supp. 934 (D.Colo. 1983). The plaintiff incurred his injuries in Colorado by use of the product in this state. Plaintiff received medical treatment in Colorado and is a resident as well. Therefore, Colorado law applies.

■■■ We turn next to the issue of successor liability as to New Elliott. The general rule of successor liability provides for nonliability on the part of a successor corporation. The rule states:

> [W]here one company sells or otherwise transfers all its assets to another company the latter is not liable for the debts and liabilities of the transferor, except where: (1) the purchaser expressly or impliedly agrees to assume such debts; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is entered into fraudulently in order to escape liability for such debts.

*Kloberdanz v. Joy Manufacturing Co.*, 288 F.Supp. 817, 820 (D.Colo.1968); *Ruiz v. Excello Corp.*, 653 P.2d 415, 416 (Colo. App.), *cert. denied* (1982); 15 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 7122 N. 1 (rev.perm.ed.1983). The facts indicate New Elliott declined to expressly or impliedly assume the liabilities of Old Elliott. The transaction did not amount to a consolidation or merger. New Elliott was not a continuation of Old Elliott. Additionally, there is no evidence of fraud.

Colorado continues to adhere to the traditional view of successor nonliability. The case of *Ruiz v. Excello Corp.*, 653 P.2d 414, 417 (Colo.App.1982), arose when the plaintiff was severely burned and brought suit on the theories of strict liability and negligence. The *Ruiz* court, 653 P.2d at 417, stated "... there is nothing in the legislative history of the CPLA [Colorado Products Liability Act] which indicates a legislative intent to abrogate the corporate rule of successor liability as applied to a manufacturer." We find this case to be a consistent expression on how Colorado courts would determine the proposed issue if directly confronted with the question of corporate successor liability.

■■■ Several courts have diverged from the general contract view of successor liability and developed the product line exception for strict liability cases. *Dawejko v. Jorgensen Steel Co.*, 290 Pa.Super. 15, 434 A.2d 106 (1981); *Ramirez v. Amsted Industries, Inc.*, 86 N.J. 332, 431 A.2d 811 (1981); *Ray v. Alad Corp.*, 19 Cal.3d 22, 560 P.2d 3, 136 Cal.Rptr. 574 (1977). This exception arose expressly to allow the products liability plaintiff to recover against the successor corporation. The *Ramirez* court, 86 N.J. 332, 431 A.2d 811, 825 (1981), defined the exception as follows:

> That where one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes the same manufacturer's operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor.

Colorado has not specifically adopted this rule. Although the product line exception was applied in the case of *Hickman v. Thomas C. Thompson Co.*, 592 F.Supp. 1282 (D.Colo.1984), after thorough consideration, we decline to adopt the rationale expressed in that case. Unlike *Hickman*, there was a meaningful time span between the date of sale to the date of the injury. Also, unlike *Hickman*, the product in question was not continuously being manufactured at the time of the sale. The relationship of New Elliott to the plaintiff's injuries is therefore remote, while in *Hickman*, the plaintiff alleged that her injuries were ongoing.

Plaintiff also urges the Court to adopt the continuity of enterprise exception to the general successor liability rule. There was no common identity of stock, directors, officers, or stockholders between the corporations. New Elliott did retain the existing employees but not the management. Thus, New Elliott is not a mere continuation of Old Elliott. *Cyr v. B. Offen Co.*, 501 F.2d 1145, 1151 (1st Cir.1974); 15 W. Fletcher, *Cyclopedia of the Law of Private Corporations*, § 7122, at 189 (rev. perm.ed. 1983).

Additionally, the Court notes the Colorado Products Liability Act, C.R.S. § 13–21–401 *et seq.* (Supp.1985), failed to incorporate the concepts of the product line theory and the provisions of the continuity of enterprise theory which existed before the act. These omissions create a negative inference that the legislature considered these theories but chose not to enact them.

When a federal court, in a diversity action, is faced with a problem of construing state law, it may look to all resources for guidance. These include the decisions of the bordering state courts, as well as Colorado and federal decisions, and general trend on the law and weight of authority. *City of Aurora v. Bechtel Corp.*, 599 F.2d 382 (10th Cir.1979). We have noted the persuasive influence of *Ruiz v. Excello Corp.*, 653 P.2d 415 (Colo.App.1982). It is clear the weight of authority approves the traditional notions of successor corporation nonliability. We elect to follow the majority trend of nonliability of successor corporations. *See, e.g., MacMillan Bloedel Ltd. v. Flintkote Co.*, 760 F.2d 580 (5th Cir. 1985); *Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451 (11th Cir.1985); *Mozingo v. Correct Manufacturing Corp.*, 752 F.2d 168 (5th Cir.1985); *Dayton v. Peck, Stow and Wilcox Co.*, 739 F.2d 690 (1st Cir.1984); *Weaver v. Nash International, Inc.*, 730 F.2d 547 (8th Cir.1984); *Travis v. Harris Corp.*, 565 F.2d 443 (7th Cir.1977); see also to the same effect: *Products Liability—Successor Corporations—Liability for Defects in Predecessor's Products, Stratton v. Garvey International, Inc.*, 33 U.Kan.L.Rev. 791 (1985); Annot., 66 A.L. R.3d 824, 827 (1975). We recognize the result reached in this matter is harsh; however, we believe it is consistent with the current status of Colorado law. For us to come to any other conclusion would be an unwarranted exercise in decision making. We decline to apply the product line theory or the continuity of enterprise theory as urged by the Plaintiff.

### III.

ACCORDINGLY, the Magistrate's Recommendation to Grant Summary Judgment is hereby adopted for the reasons expressed in this opinion. The Motion for Summary Judgment is GRANTED in favor of the Defendant Elliott Equipment Corporation. The action is hereby DISMISSED as to Defendant Elliott Equipment Corporation.