**Keith Edwin GIBSON, et al., Plaintiffs,**

v.

**ARMSTRONG WORLD INDUSTRIES, INC., et al., Defendants.**

Civ. A. Nos. 83–K–1756, 84–K–421, 84–K–840, 84–K–912, 84–K–942, 84–K–1075, 84–K–1245, 84–K–1354, 84–K–2066, 85–K–2429 and 85–K–2431 to 85–K–2433.

United States District Court,
D. Colorado.

Dec. 8, 1986.

J. Conard Metcalf, Williams, Trine, Greenstein & Griffith, P.C., Boulder, Colo., Brian D. Weinstein, Russell W. Budd, Frederick M. Baron & Associates, Dallas, Tex., for plaintiffs.

Ronald H. Shear, Tilly & Graves, Denver, Colo., for Armstrong World Ind.

James E. Goldfarb, Greengard & Senter, Denver, Colo., for Nicolet, Inc.

John F. Hensley, Dietze, Davis & Porter, Boulder, Colo., for Crown Cork & Seal Co.

William J. Madden, Madden & Strate, Wheat Ridge, Colo., for Combustion Engineering, Inc. and Walsh Refractory Corp.

Jack Kent Anderson, Anderson, Campbell & Laugesen, Denver, Colo., for Fibreboard Corp., Armstrong, Acands, Inc., Celotex Corp., Eagle-Picher Ind., Keene Corp., Owens-Corning Fiberglas, Owens-Illinois, Inc., and Pittsburgh Corning Corp.

Thomas N. Alfrey, Kathleen G. Lanterman, Hall & Evans, Denver, Colo., for Raymark Industries.

David B. Higgins, Long & Jaudon, Denver, Colo., for Owens-Corning Fiberglas.

John R. Rodman, Renner & Rodman, Denver, Colo., for Owens-Illinois, Inc.

Bryan P. Streelman, Henderson and Streelman, P.C., Denver, Colo., for John Crane Co.

Marcus L. Squarrel, Paul F. Hultin, Parcel, Mauro, Hultin & Spaanstra, Denver, Colo., for Harbison-Walker Refractories.

Herbert A. Delap, Peter H. Blairs, Jr., Stutz, Dyer, Miller & Delap, Denver, Colo., for U.S. Gypsum Co.

James D. Hinga, Baker & Hostetler, Denver, Colo., for other defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

### BACKGROUND

Plaintiffs in these consolidated actions seek recompense for injuries suffered as a result of exposure to defendants' asbestos products. Defendant Nicolet, Inc. now moves for summary judgment. Plaintiffs have filed a cross-motion for summary judgment.[1]

All plaintiffs "claim that they were exposed to asbestos-containing products manufactured by Keasbey & Mattison Company. Defendant, Nicolet, Inc., has been sued as the successor in interest to Keasbey & Mattison Company, as noted in plaintiffs' complaints." Plaintiffs' Brief at 1. Nicolet's motion for summary judgment asserts "that the defendant is not the successor entity to Keasby-Mattison [sic] and should not be held responsible for any injuries caused by exposure to a product manufactured and distributed by Keasby-Mattison, as a matter of law." Nicolet's Brief at 3. Of course plaintiffs' cross-motion alleges, as a matter of law, Nicolet's liability as a successor to K & M.

### STANDARDS FOR DECISION

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining the existence of any genuine issue of material fact, the record is construed in the light most favorable to the party opposing the motion. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir.1980). However, the adverse party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genu-

---

1. The case numbers listed under the caption for Nicolet's motion omit 84–K–1245 and 84–K–1075. Moreover, the caption lists 85–K–2431 twice. In their combined cross-motion and response to Nicolet's motion, plaintiffs listed only case numbers 84–K–1245, 85–K–2429, 85–K–2431, 85–K–2432, and 85–K–2433 under the base file number of 83–K–1756. In responding to plaintiffs' cross-motion, Nicolet included only the same case numbers used by plaintiffs. Given the recurring confusion which has attended the filing of papers in this consolidated action, *see* Order of November 5, 1986, I assume the motions before me apply to all thirteen of the cases listed in the caption to this order.

ine issue for trial." Fed.R.Civ.P. 56(e). Where, as here, the court is presented with cross-motions for summary judgment, each motion must be construed in favor of the opposing party, because each motion is to be accorded separate consideration. 10A Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 2d § 2720 (West 1983).

## THE CROSS–MOTIONS
### Colorado Law

The parties agree Colorado law governs my disposition of the issue of successor liability in these strict product liability actions. They also agree the most recent expostulation of the applicable legal standard by a Colorado state court is to be found in *Ruiz v. ExCello Corporation,* 653 P.2d 415 (Colo.App.1982). There the court of appeals stated:

> [W]here one company sells or otherwise transfers all its assets to another company the latter is not liable for the debts and liabilities of the transferor, except where: (1) the purchaser expressly or impliedly agrees to assume such debts; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is entered into fraudulently in order to escape liability for such debts.

*Id.* at 416, quoting *Kloberdanz v. Joy Manufacturing Co.,* 288 F.Supp. 817, 820 (D.Colo.1968).

In *Hickman v. Thomas C. Thompson Company,* 592 F.Supp. 1282 (D.Colo.1984), I adopted a fifth exception, the so-called product line exception, to the general rule of nonliability for corporate successors. I noted three jurisdictions which had adopted the product line exception: California, New Jersey, and Pennsylvania. I then quoted extensively from the leading New Jersey case, *Ramirez v. Amsted Industries, Inc.,* 86 N.J. 332, 431 A.2d 811, 825 (1981), in defining the modern exception:

> [W]here one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes the same manufacturer's operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor.

*Hickman,* at 1284.

My resolution of the *Hickman* case has not met with uniform approbation in this district. In *Florum v. Elliott Manufacturing Company,* 629 F.Supp. 1145, 1149 (D.Colo.1986), Chief Judge Finesilver declined to follow my analysis in *Hickman,* at least under the facts of the case before him. The legal canvas therefore rests on an unsteady easel.

Plaintiffs paint a two-fold argument on this legal backdrop. They first argue for invocation of the product line exception under *Hickman.* They distinguish *Florum* on the facts. They also claim Nicolet is liable as a successor to K & M, even in the absence of the product line exception, because Nicolet has expressly and impliedly assumed liability for injuries caused by asbestos products manufactured and distributed by K & M. Nicolet, of course, argues the contrary. Nicolet thinks *Hickman* was incorrectly decided, and urges me to follow *Florum.* Nicolet also argues that none of the four traditional exceptions to the general rule of nonliability should apply under the facts.

I believe I was right in *Hickman* and will adhere to that view unless the Colorado Supreme Court rules to the contrary or the issue is addressed by legislation. Additionally, even though the parties agree that Colorado law governs, I find the law of Pennsylvania governs. Pennsylvania has unambiguously adopted the product line exception. That exception controls disposition of the cross-motions.

### Pennsylvania Law

In determining Nicolet's liability as a successor corporation to K & M, my

initial and indeed primary subject of inquiry is the contract of sale between those two companies. The briefs filed by Nicolet and plaintiffs concentrate heavily on the legal significance attached to various provisions of that contract. Therefore, the extent to which Nicolet has cloaked itself in the mantle of K & M is a question to be resolved by reference to the terms of the contract. *See Kloberdanz* at 819–820 (scrutinizing terms of the contract to decide the issue of successor liability in product liability context and then applying California law of successor liability since contract was made in California and was to be performed there).[2]

■ Paragraph 13 of the contract succinctly states: "This Agreement shall be governed by Pennsylvania law." Nicolet has openly admitted Pennsylvania law governs interpretation of the contract, and has cited a Pennsylvania case in support of its position. Nicolet Response Brief at 7. I will apply ¶ 13 as written. *See Western Enterprises, Inc. v. Robo-Sales, Inc.*, 28 Colo.App. 157, 470 P.2d 931 (1970).

Moreover, K & M was incorporated in Pennsylvania, and Pennsylvania was the locus of its manufacturing facilities. Although the record does not disclose the exact site at which the contract was formally executed, Nicolet inspected K & M's facilities in Pennsylvania and made an offer of purchase there. Affidavit of Guy G. Gabrielson, Jr., ¶s 5, 6. Further, K & M assets acquired under the contract, including realty, were located in Pennsylvania. *See* Exhibit A to the Contract of Sale, itself attached as exhibit A to Nicolet's original summary judgment motion. Thus negotiation and implementation of the contract involved enough contacts with Pennsylvania to require my use of Pennsylvania law even if Paragraph 13 did not exist. *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 198 Colo. 444, 601 P.2d 1369, 1372 (1979).

Having found Pennsylvania law to govern disposition of the issue of successor liability under the contract between K & M and Nicolet, I turn to the substantive provisions of the law of that commonwealth. Pennsylvania recognizes the same general rule and four attendant exceptions found in Colorado. *Dawejko v. Jorgensen Steel Company*, 290 Pa.Super. 15, 434 A.2d 106, 107 (1981). Pennsylvania has also adopted the product line exception, as articulated in the *Ramirez* case from New Jersey. *Dawejko*, 434 A.2d at 110, 111.

There can be no doubt, in the instant case, that Nicolet purchased assets for continued manufacture of asbestos products in the same "product line" as those produced by K & M. The second lead-in paragraph of the contract between K & M and Nicolet states, in pertinent part:

> Buyer [Nicolet] desires to buy certain of the assets of Seller, including the plants, machinery and equipment listed in Exhibit A hereto and used by Seller for the production of thermal insulation, asbestos paper, asbestos millboard, compressed rubber and asbestos sheet paddings and monolithic boards (these *product lines* being hereinafter referred to as "Industrial Products"), the real estate listed in Exhibit A hereto and inventories and certain other assets related to Seller's Industrial Products business.

(emphasis added)

■ Of course, the presence of a product line is, on its own, an insufficient basis on which to impose successor liability. The product line exception also requires acquisition by the successor corporation of "all or substantially all the manufacturing assets" of the predecessor. Nicolet claims this language precludes application of the product line exception to this case because it "purchased only a portion of the assets of one of the five Keasby-Mattison [sic] divisions." Nicolet's Response Brief at 6.

I do not attach any significance to the fact that the assets purchased by Nicolet represented only one K & M division rather than all five K & M divisions. The K & M

---

**2.** I am aware of the contrary decision in *Reed v. Armstrong Cork Co.*, 577 F.Supp. 246, 248 (E.D. Ark.1983). However, I choose to follow Judge Doyle's opinion in *Kloberdanz*.

industrial products division manufactured a line of products distinct from other products manufactured by other K & M divisions. *See* Nicolet's Brief at 5. Thus, if Nicolet purchased all or substantially all of the assets of the industrial products division, then successor liability should attach. Moreover, the product line exception should not be phrased "too tightly." *Dawejko* at 111. Rather, the exception should be generally phrased, "so that in any particular case the court may consider whether it is just to impose liability on the successor corporation." *Id.* Here, Nicolet's acquisition of the industrial products division occasioned control over a discrete product line. *See Amader v. Pittsburgh-Corning Corp.,* 546 F.Supp. 1033, 1036 (E.D.Pa.1982) (product line exception applies where one corporation acquires "a complete product line"). Thus Nicolet can be a successor to K & M through its acquisition of the industrial products division.

Nevertheless, Nicolet must still have purchased all or substantially all of the manufacturing assets of the industrial products division in order to be liable as a successor to that division. *Turner v. Mudrick Machine Works,* 589 F.Supp. 771, 776 (E.D.Pa. 1984). As noted above, Nicolet claims to have purchased only a portion of the division. *See* Gabrielson affidavit, ¶ 9. Nicolet does not state whether that portion constituted substantially all of the division, nor whether any portion not purchased consisted of manufacturing assets. Plaintiffs, on the other hand, assert Nicolet's purchase of the entire division. Plaintiffs' Brief at 2.

■ The factual disagreement over the extent of Nicolet's purchase does not prevent entry of summary judgment here. Universal principles of contract law dictate that the legal import to be attached to unambiguous contract provisions "is a question of law for the court, proper for resolution by summary judgment." *Lowell Staats Mining Co. v. Pioneer Uravan, Inc.,* 596 F.Supp. 1428, 1430 (D.Colo.1984). Recourse to the contract between Nicolet and K & M reveals Nicolet purchased substantially all of the manufacturing assets of the industrial products division.[3] In ¶ 3 Nicolet broadly agreed

> to purchase (i) the land, buildings, fixtures, machinery and equipment described in Exhibit A hereto, (ii) sales, accounting, production, research and engineering files, records, drawings and data, research equipment, pilot plant equipment and know-how, *related to Seller's Industrial Products business in the United States.*
> (emphasis added)

Nicolet also bought the patents, trade name, trademarks, and good will "related to Seller's Industrial Products business and covering the product line pertaining thereto." ¶ 3. *See also* ¶ 7 (assignment of contracts and obligations related to the industrial products division) and ¶ 11 (Nicolet's right to use the K & M name). These provisions, and other clauses in the contract, plainly demonstrate Nicolet's purchase included substantially all of the manufacturing assets of K & M's industrial products division in the United States. *See Dawejko* at 111 (identifying various pertinent factors, such as the acquisition of name and good will, to be used in determining whether the product line exception should apply).

---

3. Again, I am cognizant of the different conclusion reached in *Reed v. Armstrong Cork* at 250–251. I agree with that court's finding that Nicolet did not purchase all or substantially all of the manufacturing assets of the entire K & M company. I also am willing to agree, *arguendo,* with the court's finding that Nicolet did not purchase absolutely all of the manufacturing assets of K & M's industrial products division. However, a reading of the sales contract between Nicolet and K & M compels me to conclude Nicolet did purchase substantially all the manufacturing assets of the industrial products division. The Arkansas district court relied heavily on the Gabrielson affidavit. The K & M assets listed there as excluded from the sale, however, were not part of the manufacturing assets of the industrial products division. *See* Gabrielson affidavit, ¶ 9. Those assets were either of a nonmanufacturing nature or were apparently part of other K & M divisions. A close reading of the affidavit therefore confirms its inadequacy, under the legal standard supplied by the product line exception, to fend off plaintiffs' motion for summary judgment.

Since Nicolet purchased substantially all of the industrial products division, it may be held liable as a successor to K & M should plaintiffs succeed in satisfying all the requisite elements of their product liability claims for injury caused by K & M products.[4] I make no comment at this time on the relative merits of the product liability cause of action. This order relates solely to the issue of successor liability.

In light of the foregoing, IT IS ORDERED that Nicolet's motion for summary judgment is denied. Plaintiffs' cross-motion for partial summary judgment is granted.

---

**4.** Nicolet has also argued, in opposition to use of the product line exception, that other true successor corporations to K & M are still extant. Nicolet names Turner & Newall, Ltd., K & M's parent corporation, and Certain-Teed Corporation, owner of the other four former K & M divisions, in this regard. Nicolet's Response Brief at 6–7. I am mindful of such policy considerations. However, Certain-Teed has not been named as a defendant in any of these consolidated actions. I have no knowledge of its amenability to suit. Summary judgment should not rest on so slender a reed. As for T & N, that company has been in fact named in most of the consolidated actions. However, it was subsequently dismissed for lack of personal jurisdiction in all of the cases except 85–K–2431 and 85–K–2433. T & N apparently has not yet moved for dismissal in these last two cases.